JIM WILKINS V. TERRITORY.

No. 2077, Okla. T.    Opinion Filed August 23, 1909.

(103 Pac. 656.)

**HOMICIDE—Murder—Evidence.**    For facts supporting a verdict for murder with death penalty, see opinion.

(Syllabus by the Court.)

*Appeal from District Court, Comanche County; F. E. Gillette, Judge.*

Jim Wilkins was convicted of murder, and appeals.    Affirmed.

Jim Wilkins, hereinafter called the "defendant," was indicted by the grand jury of Comanche county at the September term, A. D. 1906, for murder of Jim Wilson, on the 30th day of March, 1906.    The defendant was duly arraigned and pleaded not guilty. The case was tried at the same term of court, and the defendant was found guilty, and his punishment assessed at death.    The defendant filed a motion for a new trial, based upon the single ground that the verdict of the jury was contrary to the law and to the evidence.    The motion for a new trial was overruled and an exception was reserved.    The defendant was then sentenced to be hanged according to the verdict of the jury.    The case is regularly before us on an appeal.    The facts are sufficiently stated in the opinion of the court.    The deceased was a negro.    The defendant and the two women witnesses for the territory are negroes.

*Ross, Anderson & Johnson,* for appellant.
*Charles L. Moore.* Asst. Atty. Gen., for the Territory.

FURMAN, PRESIDING JUDGE. (after stating the facts as above). The record presents only one question for our determination, and that is as to the sufficiency of the testimony to support the verdict.    The record shows that upon the trial it was agreed

by counsel on both sides that the deceased came to his death from a gunshot wound.

Elvira Lacy was the first witness for the prosecution. She testified: That on the 30th day of March, 1906, she resided at Waurika, in Oklahoma Territory, and was acquainted with both the defendant and the deceased. That the witness and another woman named Hattie Obanian were in a room talking when the deceased came in the room laughing and talking to the witness. That, about two or three minutes after the deceased came in, the defendant came to the door of the room, and, without speaking a word to any one, shot the deceased with a pistol. That after the deceased was shot he picked up a chair and asked the defendant not to shoot him again. That the deceased ran to the front door. The witness had her baby in her lap when the shot was fired. The defendant never spoke a word after firing the shot. That the deceased did not have anything in his hands when he was shot, but was standing and talking to the witness. After the defendant fired the shot he went around to the front door. The deceased was shot through the left side, and lived about half an hour. The witness knew nothing of a quarrel between the defendant and the deceased. This occurred in the evening.

Hattie Obanian testified: That she was acquainted with the defendant and the deceased. The witness and a woman named Lacy were in a room talking on the evening of the 30th of March, 1906. That the deceased came into the room where they were and stood up and was talking to Elvira Lacy. The defendant came around to the side of the door and shot the deceased. The deceased picked up a chair after he was shot and threw it over his head and said, "Don't shoot." Defendant presented his gun angling toward where the parties were in the room, and witness slammed the door shut. Elvira Lacy ran out of a window. Deceased fell on a bed. Defendant ran around the house to another door and threw it open and pointed his pistol in the room. Witness ran to the door and shut and held it closed. Witness went to deceased and called to him, but deceased made no reply. Witness then

saw the defendant looking in the room at the window with the pistol in his hand. Witness, being afraid of being shot, lay down on the floor and remained there until other people came. This occurred in the afternoon in the town of Waurika, Oklahoma Territory. The deceased did not have anything in his hands when he was shot.

J. R. Gillam testified that Waurika was in Comanche county, Oklahoma Territory.

The defendant testified: That at the invitation of the deceased he went to the room of the deceased, adjoining the room where the homicide occurred, and engaged in a game of craps with deceased. That he won all of the money deceased had and two razors. That the deceased grabbed the money and razors, and, with one of the razors in one hand and a piece of iron in the other, the deceased knocked him up against the wall and ordered and shoved him out of the room. That he told deceased, "You ought not to treat me that way," and deceased replied, "Oh, you son-of-a-bitch, I am going to kill you," and ran into the room where the women were and rushed behind a bed, where a Winchester was, and he, thinking that the deceased was going to kill him, fired the fatal shot. Defendant denied having gone to the other door and tried to get in the room after firing the shot. Hattie Obanian testified that the deceased was not making any attempt to get a Winchester when he was shot. Elvira Lacy testified that the deceased was not making any attempt to get a Winchester at the time he was shot.

This is a condensed statement of all of the material testimony in the case. The testimony for the prosecution made a case of deliberate and cold-blooded murder. This defendant, according to the evidence of the prosecution, without a moment's warning, sent a death-dealing bullet crashing through the body of the deceased, and he did this deliberately and coolly, and at a moment when no attack was being made upon him, but, on the contrary, when the deceased was laughing and talking and had no notice of

2 Cr.—36

danger. The evidence for the prosecution further shows that, not content with this, bent on his murderous design, after the door through which he fired the fatal shot had been closed, the defendant went to another door of the room and threw it open and pointed his pistol into the room. This door was closed by one of the witnesses for the prosecution and held closed. The defendant, still not content, goes to a window, with his pistol in his hand, and looks into the room. The deceased was lying on a bed in the agonies of death. Seeing him there in this condition, the defendant deserts and leaves the place. This is the evidence for the prosecution. The testimony of the defendant presented the issue of self-defense. The jury saw and heard the testimony of the witnesses, and were in a much better condition to pass upon their credibility than is this court. They believed the witnesses for the prosecution and convicted the defendant and prescribed his punishment at death. There is nothing in the record which suggests that the witnesses for the prosecution were prejudiced against the defendant, or that their testimony is untrue, except the testimony of the defendant. The jury have decided this issue against the defendant. We fail to find anything in the record which would authorize us to disturb their verdict. We believe that the jury did their duty.

This being a capital conviction, we have carefully considered the entire record and find it regular in all respects. Some expressions in the instructions might have been more clear and explicit; but they are substantially correct and, in the absence of exceptions or a request for additional instructions, they are sufficient. The evidence amply supports the verdict of the jury. It is an awful thing to take the life of a human being; but, as unpleasant as it may be, the law must be enforced. The jurymen or judges who fail to do their duty faithfully and fearlessly, thereby make outlaws of themselves, and are largely responsible for the shedding of innocent blood. The law, both human and divine, prescribes the death penalty for cases of wilful murder. Courts

and juries have the power, but they are without the moral right, to disregard the mandates of the law.

Finding no error in the record, our duty is plain. We have no alternative except to affirm the judgment, with instructions to the district court of Comanche county to set a date for carrying the judgment into effect.

The judgment of the lower court is therefore in all things affirmed.

DOYLE and OWEN, JUDGES, concur.